# In the United States Court of Federal Claims

**NOT FOR PUBLICATION**

No. 22-899T
(Filed: April 6, 2023)

|  |  |
|---|---|
| **STACEY L. KING**, | ) ) ) |
| *Plaintiff,* | ) ) ) |
| v. | ) ) ) |
| **UNITED STATES**, | ) ) ) |
| *Defendant.* | ) ) |

*Stacey L. King*, Las Vegas, NV, *pro se.*

*Anthony M. Cognasi*, Trial Attorney, Court of Federal Claims Section, Tax Division, U.S. Department of Justice, Washington, DC, for defendant.

## ORDER OF DISMISSAL[1]

Plaintiff *pro se* Stacey L. King filed this federal income tax-related matter–pled as a breach of contract case–against the United States on August 10, 2022. *See* ECF No. 1. The genesis of this matter relates to plaintiff's 2014 Form 1040, U.S. Individual Income Tax Return, filed on April 15, 2015. In processing plaintiff's 2014 federal income tax return, the United States Department of the Treasury, Internal Revenue Service (IRS), assessed an amount due of $3,100 plus $1.27 in interest. *See* ECF No. 8-1 at 4.[2] No payment was remitted with plaintiff's 2014 federal income tax return. *See id.* Thereafter, between April 2017 and April 2019, the IRS offset the arrearage with plaintiff's reported overpayments for tax years 2016 through 2018 in the aggregate amount of $3,113.42, plus $401 in installments

---

[1] This case was transferred to the undersigned for adjudication on March 28, 2023, pursuant to Rule 40.1(b) of the Rules of the United States Court of Federal Claims (RCFC). *See* ECF Nos. 12–13.

[2] In ruling upon a motion to dismiss for lack of subject matter jurisdiction under RCFC 12(b)(1), the Court may consider matters outside the complaint. *See Alisud-Gesac Handling-Servisair 2 Scarl v. United States*, 161 Fed. Cl. 655, 662 (2022) (citing *Cedars-Sinai Med. Ctr. v. Watkins*, 11 F.3d 1573, 1584 (Fed. Cir. 1993)), *appeal docketed*, No. 23-1087 (Fed. Cir. filed Oct. 27, 2022).

reportedly made by plaintiff.[3]  *Id.* at 4–5.  On May 15, 2019, the IRS assessed plaintiff a failure to pay tax penalty in the amount of $413.15 for tax year 2019.  *See id.* at 5.  At this point, according to the Court's calculation, the parties were all square.

On November 25, 2019, plaintiff filed suit in the United States District Court for the District of Nevada challenging his tax year 2014 assessment and seeking a refund of the IRS offsets for tax years 2016 to 2018.  *See* ECF No. 8-1 at 10–15.  The parties resolved the matter in May 2020, executed a settlement agreement, and subsequently filed a notice of voluntary dismissal.  *See* ECF No. 8-1 at 17–19, 21–22, 24.  Pursuant to the settlement agreement dated May 1, 2020, plaintiff was credited with an overpayment of his 2014 federal income taxes in the amount of $3,739.42 plus statutory interest.  *See* ECF No. 11-1 at 1; *see also* ECF No. 8-1 at 6–7.  According to the complaint filed in this case, "[i]n October of 2020, Defendant delivered a check to Plaintiff for said tax overpayment . . . ."  *See* ECF No. 1 at 2.  This payment presumably concluded the tax year 2014 federal income tax dispute.

Nevertheless, on August 10, 2022, plaintiff commenced this action alleging the IRS failed to process and refund plaintiff's reported federal income tax overpayments for tax years 2020 and 2021.  Plaintiff alleges the IRS mistakenly withheld these refunds to satisfy the same 2014 arrearages the parties resolved through their May 1, 2020 settlement agreement, thereby breaching the agreement.  *See id.* at 2–3.  Plaintiff seeks monetary damages in the amount of $11,000, plus interest, reimbursement of unspecified costs and fees, and a court order directing the government's compliance with the terms of the May 1, 2020 settlement agreement.  *Id.* at 3.

On December 16, 2022, defendant filed a partial motion to dismiss plaintiff's complaint for lack of subject matter jurisdiction, characterizing the complaint as asserting three claims: tax refund claims for tax years 2020 and 2021, and a breach of contract claim premised thereupon.  *See* ECF No. 8 at 1.  Defendant argues the Court does not have jurisdiction over either tax refund claim because plaintiff failed to request a refund for tax year 2020 and filed his complaint before his cause of action accrued for tax year 2021.[4]  *See* ECF No. 8.  Defendant further notes plaintiff underpaid his federal income tax due for tax year 2020 and, as of October 13, 2022,

---

[3] A May 1, 2020 settlement agreement between the parties, discussed *infra*, suggests plaintiff made payments in the aggregate amount of $626 during this timeframe.  *See* ECF No. 11-1 at 1 (crediting payments of $131 and $495 in addition to 3 federal tax refund offsets).  The delta is attributable to the inclusion of a $225 reversal in the calculation of plaintiff's payments or credits.  *Compare id.* *with* ECF No. 8-1 at 4–5.

[4] As detailed below, defendant mistakenly cites IRS assessment dates as the dates plaintiff reportedly filed his 2020 and 2021 federal income tax returns.  *Compare* ECF No. 8 at 4 *with* ECF No. 8-1 at 27, 32.  The correct dates do not affect the Court's analysis.

plaintiff's arrearage totaled $2,120.64, including interest. *See* ECF No. 8 at 4; ECF No. 8-1 at 27–29.

The alleged breach of the settlement agreement by the government is inextricably intertwined with the IRS's processing of plaintiff's federal income tax returns for tax years 2020 and 2021. In other words, plaintiff's breach of contract claim turns on the government's purported decisions to offset plaintiff's reported overpayments in tax years 2020 and 2021 to satisfy a tax arrearage settled in May 2020. The Court, however, lacks jurisdiction to examine the IRS's alleged (mis)processing of plaintiff's federal income tax returns for tax years 2020 and 2021.

"To maintain a tax refund suit against the United States, taxpayers must first file a refund claim with the [IRS]." *Weston v. United States*, No. 22-1179, 2022 WL 1097361, at *1 (Fed. Cir. Apr. 13, 2022) (per curiam) (citing 26 U.S.C. § 7422(a)). In turn, Title 26, United States Code, Section 6532(a)–titled "Suits by taxpayers for refund"–provides in relevant part:

> No suit or proceeding under section 7422(a) for the recovery of any internal revenue tax, penalty, or other sum, shall be begun before the expiration of 6 months from the date of filing the claim required under such section unless the Secretary renders a decision thereon within that time . . . .

26 U.S.C. § 6532(a)(1). The filing of a refund claim begins the six-month clock codified in § 6532(a). Unless the IRS issues a notice of decision during the six-month period, the filer must await the end of the statutory period before filing suit in this Court.

Plaintiff filed his 2020 Form 1040, U.S. Individual Income Tax Return, on April 25, 2021. *See* ECF No. 8-1 at 27. Rather than seek a refund due to a claimed overpayment, plaintiff remitted a payment of $2,714 with his tax return. *See id.* Since plaintiff did not request a refund in his 2020 Form 1040, the Court does not have jurisdiction over his tax refund claim for that tax year. *See Weston*, 2022 WL 1097361, at *1 (citing 26 U.S.C. § 7422(a)). Additionally, according to IRS records, plaintiff still owes $2,100 in back taxes, plus interest, for tax year 2020. *See* ECF No. 8-1 at 27–29. As such, plaintiff must comply with the Full Payment Rule– i.e., prepay his principal tax liability for tax year 2020–before seeking this Court's intervention. *See Shore v. United States*, 9 F.3d 1524, 1525–28 (Fed. Cir. 1993). At bottom, regardless of whether the IRS properly assessed plaintiff's arrearage, plaintiff did not file the requisite administrative refund claim for tax year 2020 and failed to comply with the Full Payment Rule.

Next, plaintiff filed his 2021 Form 1040, U.S. Individual Income Tax Return, on April 18, 2022. *See* ECF No. 8-1 at 32. The complaint in this case was filed

just 3 months and 23 days later, on August 10, 2022. *Compare id. with* ECF 1. According to government records, the IRS assessed plaintiff's tax return on September 12, 2022, and presumably issued a decision thereafter, calculating a refund due of $6,895. *See* ECF No. 8-1 at 32–34. This Court lacks jurisdiction to assess the propriety of the IRS's actions regarding plaintiff's 2021 federal income tax return and administrative refund claim because plaintiff did not wait for either the six-month statutory waiting period to expire or for the IRS to issue a decision on his requested refund before filing his complaint. *See Weston*, 2022 WL 1097361, at *1 ("[T]he failure to file a timely complaint under § 6532(a)(1) deprives the [Court of Federal Claims] of subject matter jurisdiction.") (citing cases); *see Gaynor v. United States*, 150 Fed. Cl. 519, 537–38 (2020) ("[O]ur jurisdiction is assessed at the time at which a complaint is filed – not subsequently, after a plaintiff already has filed an action. Concluding otherwise would render the statutory waiting period a dead letter."); *e.g.*, *id.* at 538 (dismissing tax refund claims for lack of jurisdiction because the "requisite waiting period had not yet elapsed" when plaintiff filed the initial complaint).

Because the viability of plaintiff's breach of contract claim turns exclusively on the merits of his 2020 and 2021 tax refund claims over which the Court lacks jurisdiction, the breach of contract claim cannot stand at this juncture. In other words, when plaintiff filed this case, his breach of contract claim was not ripe insofar as it relied on tax year 2020 due to his failure to seek a refund and to comply with the Full Payment Rule. In turn, the claim's reliance on tax year 2021 was jurisdictionally premature because the complaint was filed before the six-month statutory waiting period lapsed or the IRS decision. Accordingly, the Court lacks subject matter jurisdiction over plaintiff's breach of contract claim, as well as the two underlying tax refund claims, and this case must therefore be dismissed. *See* RCFC 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."); *Folden v. United States*, 379 F.3d 1344, 1354 (Fed. Cir. 2004) ("Subject-matter jurisdiction may be challenged at any time by the parties or by the court *sua sponte*.") (citing *Fanning, Phillips & Molnar v. West*, 160 F.3d 717, 720 (Fed. Cir. 1998)).

To be clear, according to government records, shortly after plaintiff filed the complaint, the IRS assessed plaintiff's administrative refund claim finding plaintiff entitled to a refund for tax year 2021. Plaintiff may now refile suit insofar as he relies upon the tax year 2021 assessment, potentially overcoming the jurisdictional hurdles discussed *supra*. The same, however, does not hold true regarding plaintiff's tax year 2020 federal income tax return. As explained, for tax year 2020, plaintiff reported an underpayment and remitted payment for his calculated arrearage rather than request a refund. Additionally, IRS records indicate plaintiff has not yet paid in full his tax year 2020 liability. To properly bring a claim based

on the IRS's assessment of his tax year 2020 liability, plaintiff must first cure the continuing jurisdictional defects discussed herein.[5]

For these reasons,

(1) Defendant's Partial Motion to Dismiss plaintiff's complaint for lack of subject matter jurisdiction (ECF No. 8) is **GRANTED**;

(2) Plaintiff's complaint (ECF No. 1) is **DISMISSED** without prejudice; and

(3) The Clerk of Court is directed to **ENTER** Judgment **DISMISSING** this case without prejudice

No costs.

It is so **ORDERED**.

s/ Armando O. Bonilla
Armando O. Bonilla
Judge

---

[5] If the IRS uses a portion of plaintiff's tax year 2021 calculated refund to offset his tax year 2020 arrearage, the Full Payment Rule will be satisfied.  That said, plaintiff would still need to file an administrative refund claim for tax year 2020 and await either a decision by the IRS or the expiration of the six-month statutory waiting period.